**Karnail Singh VIRK, Petitioner,**

v.

**IMMIGRATION & NATURALIZATION SERVICE, Respondent.**

**No. 01–70055.**

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Feb. 6, 2002.

Filed July 16, 2002.

---

Antonio Salazar, Salazar Law Offices, Seattle, WA (Daniel Hoyt Smith, Mac-Donald, Hoague & Bayless, on the brief, Seattle, WA), for the petitioner.

Cathy Appling, Thankful Vanderstar, Office of Immigration Litigation, Washington, DC, for the respondent.

Before: CANBY, FERNANDEZ,* and KLEINFELD, Circuit Judges.

CANBY, Circuit Judge.

The issue before us is whether the Board of Immigration Appeals ("BIA") abused its discretion in denying a motion to reopen proceedings to allow an alien to apply for a waiver of deportation. Because we find that the BIA improperly considered the impact of an unrelated section of the immigration statute and failed properly to weigh the positive and negative factors in exercising its discretion, we grant the petition for review and vacate the BIA's denial of the motion to reopen.

### Factual Background

Karnail Virk, a citizen of India, entered the United States in 1983 at the age of 23. Almost immediately, he entered into a fraudulent marriage with an American citizen, Brenda Young.[1] Young applied for a visa for him and he was admitted to the United States as a lawful permanent resident on January 10, 1984.

Two years later, Young was arrested in connection with a large-scale marriage fraud prosecution. She was convicted and went to prison. Virk apparently was also charged, entered a plea and spent some time on probation. Virk and Young were divorced in 1985.

Among the individuals believed to be involved in the sham marriage conspiracy was a woman named Rupinder Mann, then a citizen of India who had entered the United States in 1984. She became romantically involved with Virk shortly thereafter. Mann was charged in the conspiracy, but apparently was not prosecuted.

Virk married Mann in 1987. In 1984, Mann had given birth to a daughter, not Virk's, in the United States; Virk is the only father this girl has ever known. Mann and Virk have since had two more children, one born in 1987 and the other in 1993. Mann was granted lawful permanent resident status in 1990 under a Farmworker Amnesty Program. She became a U.S. citizen in 2000. The Immigration and Naturalization Service ("INS") was aware of her earlier involvement in marriage fraud when it, nonetheless, found her to be a person of good moral character. *See* 8 U.S.C. § 1427.

Virk owns and operates a landscaping business he started shortly after his arriv-

---

* Judge Politz was originally a member of this panel and heard argument in this case. He died prior to circulation of this opinion, and pursuant to General Order 3.2(g), Judge Fernandez was drawn as a replacement. Judge Fernandez was provided with a tape of the oral argument as well as the briefs and other materials received by the other members of the panel.

1. To avoid confusion we refer to Virk's wives by their maiden names.

al in the United States. He and Mann also own and operate a hotel in the State of Washington that they purchased in 1990.

### Procedural Background

In 1986, the INS issued an Order To Show Cause, charging that Virk was deportable because he was excludable at entry pursuant to § 212(a)(19) and (20) of the Immigration and Naturalization Act ("INA").[2] A year later, an immigration judge found him deportable as charged and ordered him deported to India. He filed a timely appeal with the Board of Immigration Appeals ("BIA"), which was dismissed in 1992. Virk then filed a petition for review with this court, which was denied on the merits in 1994.

In September 1994, Virk filed a Motion to Reopen the proceedings with the BIA so that he could request a waiver of deportation under § 241(f), which allows waivers of deportation for aliens who are deportable under § 212(a)(19) but who have qualifying relatives who are citizens or legal permanent residents.[3] In 2000, the BIA held that Virk was statutorily eligible for a waiver but denied his motion to reopen. The BIA denied the motion as an exercise of its discretion because it found that Virk's unfavorable factors outweighed his favorable factors. Virk then filed this appeal.

We review for abuse of discretion. *INS v. Abudu*, 485 U.S. 94, 108 S.Ct. 904, 99 L.Ed.2d 90 (1988).

### Discussion

A. *Requirement of a visa-eligible relationship*

■ Although the BIA stated that it was denying reopening under § 241(f) as an exercise of discretion, it placed controlling emphasis on Virk's ineligibility for an immigrant visa based on a spousal preference. The BIA explained that "[s]ince both [Virk] and his current spouse have committed marriage fraud they are both barred by section 204(c) of the Act[4] ... from petitioning for an immigrant visa.... [5] Therefore, the immigrant visa [Virk] seeks to procure, vis-a-vis a waiver of deportability, is the one he obtained through a sham marriage." For that reason, and because Virk's present spouse previously had participated in a sham marriage, the BIA found that the unfavorable factors outweighed the favorable factors

2. The Immigration Act has undergone numerous amendments in recent years. The BIA held that Virk's case was governed by the Act as it existed prior to the 1990 amendments. In relevant part, § 212(a)(19) and (20) of the pre 1990 Act, 8 U.S.C. § 1182(a)(19) and (20) (1988), rendered excludable aliens who, respectively, acquired their status by fraudulent representations, or who lacked proper documentation of admissible status. The current version of the fraud provision may be found at 8 U.S.C. § 1182(a)(6)(C)(i).

3. Section 241(f) in the pre–1990 Act was found at 8 U.S.C. § 1251(f) (1988). The current version may be found at 8 U.S.C. § 1227(a)(1)(H).

4. Section 204(c), 8 U.S.C. § 1154(c), has not been renumbered or modified. It provides, in relevant part, that an immediate-relative petition for preference immigration status shall not be approved if the alien has previously been accorded a preference status by reason of a fraudulent marriage.

5. This is an inaccurate statement of the effect of § 204(c) on Mrs. Virk. The section prohibits the approval of a visa for an alien who has been found to have engaged in marriage fraud to avoid immigration laws. Mrs. Virk is a citizen and, therefore, has no need of a visa. There is nothing in the section that prohibits a citizen who was previously found to have been engaged in marriage fraud from petitioning for a visa for an immediate relative, including a spouse.

and denied reopening. The BIA's decision was an abuse of discretion.

The primary error in the BIA's reasoning was its conclusion that Virk's eligibility for a waiver depended upon his terminated relationship with his first and fraudulent wife, Young. Section 241(f)(1)(A) provides for a waiver of deportation for fraud for an alien who "is the spouse, parent, or child of a citizen of the United States or of an alien lawfully admitted to the United States for permanent residence." 8 U.S.C. § 1251(f)(1)(A)(i) (1988). As the BIA seems initially to have recognized, Virk meets this requirement because of his relationship with his current wife. It is that relationship, not the fraudulent relationship with his first wife, which ended in divorce, upon which Virk depends for eligibility under § 241(f).

The BIA concluded, however, that Virk could not depend on his relationship to his current wife because § 204(c) forbids the granting of a close-relative petition in favor of an alien who has committed marriage fraud. But § 241(f) requires only a current familial relationship; it does not add a requirement that the alien be eligible to obtain a new immigrant visa based on that relationship. Thus the BIA erred in ruling that, because § 204(c) precluded Virk's present wife from petitioning successfully for a visa for Virk, then Virk necessarily depended in his application for waiver on his fraudulent marriage to his first wife. *See INS v. Yang*, 519 U.S. 26, 30–31, 117 S.Ct. 350, 136 L.Ed.2d 288 (1996).

BIA precedent extending over 35 years makes it clear that, if Virk is granted relief under § 241(f), he has no need of a new visa upon petition of his current wife. Thus, the BIA has held that, where

> fraud in gaining ... entry has been excused under section 241(f) ..., that entry has been cleared of illegality, and

respondent must still be considered to be an alien who has been lawfully admitted for permanent residence. That this was the status intended to be accorded the alien given the benefits of section 241(f) seems to us obvious ....

*Matter of Manchisi*, 12 I. & N. Dec. 132, 137, 1967 WL 13978 (BIA 1967), *overruled on other grounds by Matter of Diniz*, 15 I. & N. Dec. 447, 1975 WL 31546 (BIA 1975), *rev'd by Matter of Da Lomba*, 16 I. & N. Dec. 616, 1978 WL 36481 (BIA 1978); *see also Matter of Da Lomba*, 16 I. & N. Dec. 616, 620, 1978 WL 36481 (BIA 1978) (where alien entered the country with a visa from a fraudulent marriage, and then entered into a bona fide marriage, the BIA held that "when an alien is found deportable on the charge arising out of [the fraudulent marriage], section 241(f) can save him deportation."); *Matter of Sosa–Hernandez*, 20 I. & N. Dec. 758, 761, 1993 WL 495143 (BIA 1993) (quoting *Manchisi*, 12 I. & N. Dec. at 137). The BIA has recognized that the INS has incorporated into its Operations Instructions the policy that "an alien who qualifies as a nondeportable alien under the authority of section 241(f) 'is thereby cleared of the illegality which attached to the visa and to the entry, and is considered as an alien lawfully admitted for permanent residence.'" *Sosa–Hernandez*, 20 I. & N. Dec. at 762(quoting Immigration and Naturalization Service Operations Instructions 318.5).

The BIA has also explained the relationship between § 241(f) and § 204(c) of the INA, further demonstrating that the BIA's reasoning in this case was an arbitrary departure from its settled policy. In *Manchisi*, the INS argued that what is now § 204(c) "precluded [the alien] from the exemption of section 241(f) on the basis of his 2nd marriage to a lawful permanent resident ...." *Manchisi*, 12 I. & N. Dec. at 136. The BIA stated that it did not

need to reach the question whether § 204(c) would bar an alien from receiving a new visa, explaining that "[n]o one here seeks to file a petition to obtain immediate family or preference quota status for the respondent, *nor do we see that such a petition would be necessary." Id.* at 137 (emphasis added). The BIA explained that, for those aliens receiving § 241(f) relief, § 204(c) would probably affect only those individuals who had been deported or been found deportable and left on voluntary departure, or who otherwise found themselves with no visa at all, rather than those individuals who had a visa originally obtained by a fraud that had been waived under § 241(f). *Id.* at 137 n. 1.

Thus, an alien who, like Virk, obtains permanent resident status through a fraudulent marriage, but subsequently marries a citizen or lawful permanent resident, can be forgiven the fraud and maintain lawful permanent resident status through a § 241(f) waiver of deportation.

The BIA's erroneous conclusion that Virk had to depend upon his fraudulent former relationship with his first wife led easily to its decision that Virk would be denied relief. If the *only* relationship upon which the alien relies is the sham marriage, then relief under § 241(f) is inappropriate. That is the holding of the two cases upon which the BIA relied in denying Virk's motion to reopen. *See Matter of Isber,* 20 I. & N. Dec. 676, 1993 WL 315992 (BIA 1993); *Matter of Matti,* 19 I. & N. Dec. 43, 1984 WL 48580 (BIA 1984). Those cases are not applicable to one who, like Virk, presently depends on a non-fraudulent familial relationship to meet the family-relation requirement of § 241(f). For the BIA to hold otherwise in Virk's case is an arbitrary and unexplained departure from *Manchisi, Da*

*Lomba* and *Sosa–Hernandez,* and for that reason its decision may properly be overturned. *See Lal v. INS,* 255 F.3d 998, 1007 (2001); *see also Yang,* 519 U.S. at 32, 117 S.Ct. 350("Though the agency's discretion is unfettered at the outset, if it announces and follows—by rule or by settled course of adjudication—a general policy by which its exercise of discretion will be governed, an irrational departure from that policy (as opposed to an avowed alteration of it) could constitute action that must be overturned as 'arbitrary, capricious, or an abuse of discretion.' ").

The BIA's ruling that Virk could not rely on his current marriage because of § 204(c) in effect reads relief from a fraudulent marriage out of § 241(f) for aliens like Virk, who later enter into a bona fide marriage with a citizen or permanent resident. Yet it is clear that § 241(f) permits relief from a fraudulent marriage. Subsection (c) of § 241 [6] refers to marriage fraud as one of the species of fraud within the meaning of § 212(a)(19), and § 241(f) provides relief for those excludable under § 212(a)(19). The Supreme Court has applied § 241(f) in favor of an alien who entered by reason of a fraudulent marriage. *INS v. Errico,* 385 U.S. 214, 216, 225, 87 S.Ct. 473, 17 L.Ed.2d 318 (1966). Indeed, the BIA recognized that Virk was statutorily eligible for relief under § 241(f); its error was in applying that statute in a manner that nullified much of its effect.

In sum, the BIA misinterpreted §§ 241(f) and 204(c), impermissibly narrowing the scope of § 241(f). Its conclusion that Virk was forced to rely on his relationship with his former wife for purposes of § 241(f) relief, and its denial of

---

6. Section 241(c) was found in the pre–1990 Act at 8 U.S.C. § 1251(c) (1988). The current version may be found at 8 U.S.C. § 1227(a)(1)(H) (1999).

reopening on that ground, were abuses of discretion.

### B. The Consideration of Other Factors in the BIA's Decision

The BIA has broad discretion in the factors it considers when deciding whether to grant a waiver to deportation under § 241(f). *Yang*, 519 U.S. at 30, 117 S.Ct. 350. This court cannot require the BIA to consider any particular factors. *INS v. Aguirre–Aguirre*, 526 U.S. 415, 425–26, 119 S.Ct. 1439, 143 L.Ed.2d 590 (1999). Nonetheless, the BIA's discretion is not limitless; we review the BIA's decisions for abuse of discretion. *See, e.g., Yang*, 519 U.S. at 32, 117 S.Ct. 350.

 The BIA must take into account all relevant factors, both positive and negative, when deciding whether to grant a § 241(f) waiver. *Rashtabadi v. INS*, 23 F.3d 1562, 1570–71 (9th Cir.1944); *Casem v. INS*, 8 F.3d 700, 703 (9th Cir.1993). It may not give weight to plainly irrelevant factors. *Delmundo v. INS*, 43 F.3d 436, 440 (9th Cir.1994); *see also Siang Ken Wang v. INS*, 413 F.2d 286, 287 (9th Cir. 1969). Similarly, the BIA must consider and weigh the favorable and unfavorable factors in determining whether to deny a motion to reopen proceedings on discretionary grounds. *See Arrozal v. INS*, 159 F.3d 429, 433–34 (9th Cir.1998).

 The BIA's opinion does not reflect a consideration of any of the factors weighing in favor of granting Virk the waiver. Virk has numerous positive factors that are the kinds of factors the BIA has considered in the past. He has three citizen children and a citizen wife, all of whom would suffer hardship if Virk were to be deported. *See In re H–N–*, Interim Decision 3414, 1999 WL 816502 (BIA 1999) (considering the respondent's husband and four children as positive factors); *see also In re Tijam*, Interim Decision 3372, 1998 WL 883735 (BIA 1998) (including hardship to the alien and qualifying relatives as a positive factor). He has resided in this country for nearly twenty years. *See H–N–* (considering the respondent's fifteen years of residence as a positive factor). Virk has not only been steadily employed, he has created and maintained a business employing Americans. *See In re Mendez–Moralez*, 21 I. & N. Dec. 296, 301, 1996 WL 227774 (BIA 1996) (positive factors include a history of stable employment, the existence of property or business ties); *see also Tijam*, (including value to the community as a positive factor). He has not had any problems with the law since his involvement in original entry fraud, suggesting genuine rehabilitation. *See id.* (positive factors include evidence of genuine rehabilitation if a criminal record exists).[7]

In addition to failing to consider the relevant positive factors, the BIA improperly considered a plainly irrelevant factor. Although, as argued by the INS, it was permissible for the BIA to consider Virk's fraud, consideration of Virk's wife's alleged misconduct was improper. *See Ng v. INS*, 804 F.2d 534, 539 (9th Cir.1986) ("We find that BIA consideration of the conduct of an individual not a party to the proceeding to be a form of guilt by association. We strongly disapprove . . . ."). Consideration of Virk's wife's prenaturalization misconduct was also improper because her mis-

---

7. The INS, relying on *INS v. Rios–Pineda*, 471 U.S. 444, 449–51, 105 S.Ct. 2098, 85 L.Ed.2d 452 (1985), contends that positive equities that accrue after the initiation of deportation proceedings may be given less weight. The BIA, however, did not appear to consider such equities at all. Nor did it appear to give any consideration to Virk's having established a business upon his arrival in this country, although this equity accrued prior to the deportation proceedings.

conduct was "waived by [her] subsequent naturalization as a United States citizen" and should not, therefore, be held against her, even indirectly through her husband. *See Ng,* 804 F.2d at 539.

Because the BIA failed to consider factors it has traditionally identified as positive factors and improperly considered an impermissible negative factor, the BIA's decision was an abuse of discretion. *See Ng,* 804 F.2d at 540; *see also Siang Ken Wang,* 413 F.2d at 287.

*C. Conclusion*

For the foregoing reasons, the petition for review is granted, the decision of the BIA denying Virk's motion to reopen is vacated and the matter is remanded to the BIA for further proceedings consistent with this opinion.

**PETITION FOR REVIEW GRANTED; VACATED and REMANDED.**